canvass. We repeat what was said by this court in People ex rel. Maxim v. Ward, supra:

"All proof of errors committed by the board of canvassers in the count of the ballots, if any errors were committed, is contained in that ballot box. The contents of the box, and hence all the proof, is at the disposal of the court, and subject to its mandate."

. The vote was not counted or returned in accordance with the statute. Matter of Larkin, 46 App. Div. 366, 61 N. Y. Supp. 597. It was the duty of the inspectors and poll clerks to canvass the vote in the manner provided by statute, and, until they have so counted the vote, the duty imposed upon them as ministerial officers has not been performed.

It was said in Bradhurst v. First G. S.-W. T. R. Co., 16 Johns. 8:

"It has been frequently decided that, when the Legislature confer a power on any inferior tribunal, the exercise of which may affect the rights of person or property, notwithstanding their decision may be declared to be final, yet this court, like that of the Court of King's Bench, has a general superintending control over its proceedings."

The courts not only frequently so decided prior to that early day, but have continued to so decide to the present time. 10 Amer. & Eng. Ency. of Law, p. 807; People ex rel. Sanderson v. Payne, 12 Abb. N. C. 103; People ex rel. Ranton v. City of Syracuse. 88 Hun, 203, 34 N. Y. Supp. 661; People ex rel. Nicholls v. Board of Canvassers, 129 N. Y. 395, 29 N. E. 327, 14 L. R. A. 624; People ex rel. White v. Aldermen, 31 App. Div. 438, 52 N. Y. Supp. 643; Id., 157 N. Y. 431, 52 N. E. 181; Baird v. Supervisors, 138 N. Y. 95, 33 N. E. 827, 20 L. R. A. 81; People ex rel. Harris v. Commissioners, 149 N. Y. 26, 43 N. E. 418; Matter of Stewart, 155 N. Y. 545, 50 N. E. 51; People ex rel. Maxim v. Ward, supra; Matter of Larkin, supra; People ex rel. Perry v. Board of Canvassers, 88 App. Div. 185, 84 N. Y. Supp. 406.

The statutory provisions authorizing proceedings by mandamus in election cases do not divest the court of its common-law jurisdiction to issue a writ of mandamus commanding the inspectors of election to convene and perform their duties as prescribed by statute. People ex rel. White v. Aldermen, supra; Matter of Stewart, supra.

The order should be affirmed, with $10 costs and disbursements. All concur.

---

FORTIER v. DELAWARE, L. & W. R. CO. et al.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1904.)

1. ADVERSE POSSESSION—CLAIM OF TITLE.
   Under the express provision of Code Civ. Proc. § 369, to constitute adverse possession of land the occupation must be taken and continued under claim of title, exclusive of any other right.

2. SAME—EXCLUSIVE OCCUPATION.
   Under Code Civ. Proc. § 371, providing that, where adverse possession is not based on a written instrument or judgment, only the property actually occupied can be held adversely, and section 372, providing that in such case, to constitute adverse possession, the land must be protected by a substantial inclosure, or usually cultivated and improved, one who drove

piles, marking out a space which he did not otherwise occupy, though he occupied an adjoining dock, did not have adverse possession of the space marked by the piles.

**3. SAME—EVIDENCE.**

Evidence *held* to support a finding that plaintiff had not occupied land which he claimed by adverse possession under claim of title, exclusive of any other right, continuously for 20 years.

Appeal from Trial Term, Erie County.

Action by James P. Fortier against Delaware, Lackawanna & Western Railroad Company and others. From a judgment in favor of defendants, and an order denying a new trial, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Lewis & Lewis, for appellant.

Rogers, Locke & Milburn, for respondents.

WILLIAMS, J. The judgment and order should be affirmed, with costs.

The action was brought to recover real property, with damages for the detention thereof. The Delaware, Lackawanna & Western Railroad Company is the principal defendant; the property in question being a part of its terminal in the city of Buffalo. The other defendants were made parties upon the allegation that they had some interest in the property, also. The plaintiff claimed that he was about November 15, 1880, the owner and in possession of the property, and that the defendant the Delaware, Lackawanna & Western Railroad Company wrongfully took possession thereof, and has ever since retained the same. The defendant disputed this, and claimed itself to be the owner and entitled to the possession of the property. The plaintiff based his claim of ownership and right to possession upon alleged adverse possession for more than 20 years. He never had any conveyance of the property, and never made any claim of ownership or title under a written instrument or a judgment or decree. The defendant received a conveyance February 24, 1868, which it claimed covered the property in question; and its grantor acquired title to the property by conveyance constituting a perfect chain of title from the Holland Land Company, the original landowner, in 1827, down to such grantor. The plaintiff denied that defendant's conveyance covered the property in question. On the north bank of Buffalo creek, where it flowed into Lake Erie, was a pier constructed by the government of stone, known as "North Pier." The first conveyance in defendant's chain of title, in 1827, described two lots (Nos. 150 and 151) upon a map made by Joseph Endicott of the property of the grantors. Lot No. 151 was bounded on the west by Lake Erie, and on the south by the North Pier. Lot No. 150 was bounded on the west by Lake Erie, also, and was north of lot No. 151, an avenue only being between them. In 1852, 1853, and 1854 there was an old dock, and some buildings thereon, extending north from the North Pier, near its westerly end; and this dock and buildings the plaintiff claimed to have taken possession of in 1853 or 1854, and he claimed

this dock was westerly of, and entirely outside of, lots Nos. 150 and 151. It may not be very material to determine this dispute between the parties as to whether defendant's deed covered the property taken possession of by plaintiff, because, if the plaintiff ever acquired title to the property by adverse possession at all, he did so before defendant received its conveyance; and plaintiff must succeed here, if at all, upon the strength of his own title, and not the weakness of the defendant's title.

Whether plaintiff's possession was continuous from 1853 or 1854 for more than 20 years, as claimed by him, was a question for the jury, and was submitted to them by the court. The plaintiff claimed the dock, as possessed by him, extended from the North Pier to the extension of Jay street, which street was parallel with the pier. In 1857 he drove some piles westerly of the dock out to the end of the pier, and claimed to have possession of that space, and to have acquired title thereto by adverse possession, also. The court charged the jury that, in order to constitute adverse possession, the occupation must be taken and continued under claim of title, exclusive of any other right; and such is the provision of the Code, § 369, etc. The evidence was quite meager, if there was any at all, that the plaintiff, when he entered into the occupancy of the property, claimed title thereto, and especially that his claim was exclusive of any other right. The evidence rather tends to show that he claimed his grandfather had some rights there, which others besides the plaintiff were interested in. This could hardly be a claim of title exclusive of any other right, but it was a question of fact for the jury, at least, and was left to them by the court. The claim here made not being based upon a written instrument or a judgment or decree, only the property actually occupied could be deemed to be held adversely (Code, § 371); and for this purpose land could be deemed to be occupied or possessed only when it was protected by a substantial inclosure, or was usually cultivated or improved. Code, § 372. The court submitted this question to the jury, so far as the dock itself was concerned, but refused to submit to the jury the question whether the portion where the piles were driven was thereby protected by a substantial inclosure. Of course, it was not usually cultivated or improved. Nothing was done, except to drive the piles, and leave them, without cover or any use whatever, during the 20 years thereafter. We think the court was not in error in taking this question from the jury. Upon the evidence most favorable to the plaintiff, it could not be found that this portion of the property was during all the 20 years protected by a substantial inclosure, within the provision of the Code referred to.

The verdict of the jury for the defendant may have been based upon the finding that there was no occupancy shown under claim of title, exclusive of any other right, or upon the finding that actual continuous occupancy or possession for 20 years was not shown. In either case the verdict should not be disturbed by this court.

The judgment and order should therefore be affirmed, with costs. All concur.